**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | CASE. NO. 20-MJ-49 (RMM) |
| | : | |
| | : | |
| **TIMOTHY TAYLOR,** | : | |
| Defendant. | : | |

### GOVERNMENT'S SUPPLEMENT TO THE MEMORANDUM
### IN SUPPORT OF PRE-TRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully supplements its Memorandum in Support of Pre-trial Detention. The basis of this supplement is the defendant's anticipated request for release because of the COVID-19 Coronavirus (COVID-19) that is currently affecting the nation.

The government anticipates that the defendant will request release because he believes that the D.C. jail is ill-equipped to handle the pandemic. While the government appreciates that no one is immune to the growing health crisis, we seek to assure the Court that the D.C. Department of Corrections (DOC) is taking this crisis seriously, and that at the time of this filing, no inmate is testing positive nor showing COVID-19 symptoms in the jail. Moreover, no inmates are currently under quarantine. As set forth in more detail below, DOC is taking precautionary steps to address this problem, and any assertion that DOC is failing to take remedial action is without merit.

In preparing this supplement, this office has consulted with DOC to obtain relevant information as to its handling of the public health crisis. Based upon this information, it appears that DOC is handling the situation as well as it can – no different than any organization in the United States.  Moreover, DOC is fully committed to protecting its inmates.

Specifically, DOC has done the following to ensure the safety of its incarcerated population: (1) banned all non-attorney visits to limit unnecessary exposure; (2) implemented screening processes for all visitors and incoming inmates, including attorneys and staff; such screening includes assessing visitors and inmates for symptoms, sanitizing stations, etc.; (3) if incoming residents at a DOC facility fail the screening process, they are given a mask and taken to medical to determine if they require further hospitalization or testing. Moreover, if there is concern that an inmate has COVID-19, the inmate will be placed into a single cell in a specialized unit, where the inmate's only contacts are with medical staff, who will obtain COVID-19 testing within 3-4 days; (4) DOC has implemented an incident command program, where each day, DOC units meet to discuss ongoing processes to combat the virus; (5) DOC sends out daily reminders to its staff about taking preventative, prophylactic measures to avoid infection, such as washing hands, using sanitizer, etc.; (6) DOC has constant meetings with the D.C. Department of Health to ensure its procedures meet both local and national standards, to include following updated recommendations of the Centers for Disease Control; (7) DOC has continued to engage with the USAO and the local Public Defender Service to ensure continuity of operations; (8) DOC checks and rechecks its ventilation system to ensure the air quality in the facilities; (9) DOC is tracking and ordering additional cleaning and sanitation kits (for example, as of March 17, 2020, the D.C. jail had 55,200 bars of fresh soap), as well as protective gear; (10) DOC is working with MPD to limit the number of inmates coming into its facility at any given time; and (11) DOC has the capacity to quarantine approximately 100 inmates, if necessary. Finally, and perhaps most importantly, as of the writing of this opposition (USAO had communication with DOC this morning), there are no known inmates in custody with the D.C. DOC who have yet tested positive

for the virus.[1] While the government shares the defendant's concerns over the health of the inmates, there is fortunately no evidence yet that the illness has endangered the lives of those within DOC facilities. Thus, should the defendant request release based on the crisis, his request is both premature and speculative.

In any event, even assuming DOC may ultimately become affected (which is unfortunately probable), there is nothing right now that suggests the defendant's particularized health necessitates his release. The defendant stands accused of a serious felony offense, and his record speaks to his danger to the community. As detailed in the government's original Memorandum in Support of Pretrial Detention, the defendant has a prior weapons offense, as well as a narcotics distribution crime. Moreover, the defendant has consistently performed poorly on supervision in the past. Finally, as previously mentioned, this case involves a firearm that was actually fired, along a 29-round extended magazine in the defendant's possession.

Recent case law provides this Court a template on how to treat similar requests. In *United States v. Johnston*, No. 17-46 (RMM), 2017 WL 4277140 (D.D.C. Sept. 27, 2017), this very Court released a defendant for a limited purpose: to obtain surgical treatment. "This is a temporary release to home detention that is narrowly tailored to respond to the exigent and unusual circumstances presented by [the defendant's] cancer diagnosis and the status of his testing and

---

[1] One cannot simply render a conclusory opinion that DOC is unsafe. In fact, DOC recently had to take action related to a positive COVID-19 test by a Deputy U.S. Marshal in D.C. Superior Court. As a result of this positive test, DOC followed its protocols outlined above. For example, every inmate who might have been exposed to the deputy was placed in quarantine. Of the quarantined inmates, a single inmate became symptomatic, and later tested negative for COVID-19. The remaining inmates remained in quarantine to protect the remainder of DOC's population and since that time, have been determined to be safe. Thus, DOC is continuing to ensure its employees and its inmates' safety.

3

treatment." *Id.* at *9. Here, while the government is unaware of any particularized health risk, a blanket request for release is inappropriate. While this pandemic is quite serious, DOC has handled viral outbreaks before – the flu and H1N1 – and the government is unaware of any custodial release on that basis alone.

A request for release must still be grounded in the factors set forth in 18 U.S.C. § 3142. For example, in *United States v. Parker*, 517 F. Supp. 2d 375, 377 (D.D.C. 2007), the Court held that a defendant's "history and characteristics" is only one of four factors that the Court must consider in determining the appropriateness of pretrial detention. *Id.* (defendant's medical conditions, including diabetes, asthma and hypertension, for which he required ongoing medication and treatment, cannot be dispositive in considering motion for release).

A D.C. district court recently addressed the specific issue of COVID-19 exposure too. In *United States v. Hill*, 19-cr-260 (APM) (D.D.C.), the defendant filed a motion for release. The Court denied the defendant's motion for release, without a hearing, noting:

> Defendant's release would present a danger to the community and that there is no condition or combination of conditions that would reasonably assure the community's safety. Although the court recognizes the danger presented by the coronavirus outbreak, and that older populations are more vulnerable, on balance release is not warranted at this time. The Department of Corrections is taking precautions to protect the inmate population, and there is not any reported case within the inmate population (to the court's knowledge). The court is prepared to reconsider this order should conditions change at the jail.

*Id.,* Minute Order, March 19, 2020.

Opinions filed in neighboring districts are in accord.[2] On March 17, 2020, Judge Paul Grimm of the U.S. District Court, Maryland, issued a written memorandum opinion on this very

---

[2] *But see United States v. Stephens*, 15-cr-95-AJN (March 19, 2020 S.D.N.Y.) (COVID-19 outbreak and as well as a change in the facts of the case – a possible misidentification by an

4

issue. *United States v. Martin*, 2020 WL 1274857, *2 (D. Md. March 17, 2020). Noting, appropriately, that the Court "takes this [COVID-19] health risk extremely seriously," the Court nevertheless recognized that "resolving . . . an order of detention must in the first instance be an individualized assessment of the factors identified by the Bail Reform Act." *Id.* at *3. In addressing the new issue raised by the defendant – COVID-19 – the Court nevertheless found that the defendant's health (his asthma, high blood pressure, and diabetes) was "insufficient to rebut the proffer by the Government that the correctional and medical staff at [the local detention facility] are implementing precautionary and monitoring practices sufficient to protect detainees from exposure to the COVID-19 virus." *Id.* at *4. Finally, the Court questioned the defendant's proposal of GPS location monitoring even if the defendant was released subject to conditions, finding that such monitoring "is not a limitless resource, nor its installation and monitoring by United States Pretrial Services officers without risk to those personnel . . . given the current recommendations regarding implementation of social distancing." *Id.*; *see also United States v. Lewis*, 19-cr-34-LMA-MBN (March 19, 2020 E.D. La.) ("If anything, the COVID-19 pandemic has reduced the availability of conditions to mitigate the risk to the community").

The government appreciates the gravity of this global pandemic and is committed to ensuring the safety and health of inmates like the defendant. Should circumstances change at the

---

eyewitness – necessitated release). In choosing to release the defendant, the Court noted the defendant's lack of a violent record, the weakened state of the government's evidence, the failure of the local jail to arrange legal calls in preparation of his defense, and the effective ban on legal visits with limited exceptions as bases to implement release conditions. *Id.* Notably, the Court recognized that its decision cannot be made simply because of COVID-19. *See id.* at *6 n.3 ("The Court need not decide this additional factor [the current public health crisis] here because its determination that release is necessary for the preparation of the Defendant's defense is sufficient under § 3142(i)."

5

DOC, to the point that the defendant's health is actually in jeopardy, the defendant may request reconsideration. But at this stage and at this time, DOC appears dedicated and willing to address this public health crisis. Given the plans in place at the DOC, the lack of any confirmed cases, and the danger that the defendant represents to the community – the same community also affected by this illness – the government respectfully requests that this Court grant the government's motion.

          Respectfully submitted,

          TIMOTHY J. SHEA
          United States Attorney
          D.C. Bar No. 437437

          By: ___/s/_____
          LISA N. WALTERS
          D.C. Bar No. 974-492
          Assistant United States Attorney
          Violent Crime and Narcotics Trafficking Section
          555 Fourth Street, N.W., Fourth Floor
          Washington, D.C. 20530
          Email: Lisa.Walters@usdoj.gov
          Telephone: (202) 252-7499

Dated: March 22, 2020